**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HUGH CAMPBELL McKINNEY
5985 S 45th E
Idaho Falls, ID 83406

Plaintiff,

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS
810 Vermont Avenue NW
Washington, DC 20420

Defendant.

Civil Action No. 1:18-cv-372

**COMPLAINT**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., seeking the release of withheld records about an alleged "comprehensive review" conducted by the United States Department of Veterans Affairs ("VA") concerning a federal traumatic injury protection benefit for service members known as "TSGLI." In 2017, over two million service members were protected under TSGLI for a wide variety of injuries. Almost $1 billion has been paid for TSGLI claims since the coverage came into existence. As the TSGLI program was approaching its tenth anniversary in December 2015, VA apparently undertook an assessment "to ensure that the program [was] operating effectively and meeting the intent of Congress." The results of that review, however, continue to be shrouded in secrecy. A FOIA request about the TSGLI program review—submitted on October 8, 2015—remains ignored by VA.

2. Army Sergeant First Class Hugh C. McKinney, retired ("McKinney" or "Plaintiff") seeks declaratory, injunctive, and other appropriate relief with respect to VA's unlawful withholdings of records requested under FOIA.

**JURISDICTION AND VENUE**

3. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). In addition, this Court has jurisdiction pursuant to the APA, 5 U.S.C. §§ 701-706. This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rules of Civil Procedure 57 and 65.

4. Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because the defendant is located in the District of Columbia and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**THE PARTIES**

5. Plaintiff Hugh Campbell McKinney is a disabled veteran of Operation Iraqi Freedom with a home address of 5985 S 45th E, Idaho Falls, ID 83406. He has been married for 28 years and has five children.

6. Defendant United States Department of Veterans Affairs is a federal agency headquartered at 810 Vermont Avenue NW, Washington, DC 20420. VA has possession, custody, and control over records sought by Plaintiff. VA is an agency within the meaning of 5 U.S.C. § 552(f)(1). VA's "vision" is "[t]o provide veterans the world-class benefits and services they have earned - and to do so by adhering to the highest standards

of compassion, commitment, excellence, professionalism, integrity, accountability, and stewardship."[1]

## NATURE OF THE ACTION

7. TSGLI is critical insurance for service members and their families: it provides a payment of up to $100,000 if an unfortunate, life-altering injury occurs. TSGLI benefits are payable to *any* service member who suffered a traumatic injury from October 7, 2001 (the start of Operation Enduring Freedom) until December 1, 2005 (when the traumatic injury protection law became effective). Thereafter, a member must be insured under Servicemembers' Group Life Insurance ("SGLI")—and millions of service members are insured under SGLI—in order to receive the TSGLI traumatic injury coverage.

8. McKinney was injured while leading a mounted patrol in Kirkuk, Iraq on October 9, 2005, when an Improvised Explosive Device ("IED") detonated 15-20 meters from his Humvee. According to the concurring medical opinions of at least three physicians from the VA and another two from private practice, McKinney suffered a life-altering, traumatic brain injury ("TBI") from the concussive force of the explosion. McKinney subsequently applied for the TSGLI benefit but has been denied payment. That denial is the subject of co-pending litigation, *McKinney v. VA*, No. 14-2185-TSC (D.D.C.).

9. On March 16, 2015, McKinney submitted a Petition for Rulemaking ("Petition") to VA, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §

[1] *See* https://www.va.gov/about_va/.

553, petitioning the agency to amend its regulation governing TSGLI, 38 C.F.R. § 9.20. VA denied that Petition nearly six months later, on August 6, 2015, brushing aside McKinney's rulemaking petition in terse fashion: "We appreciate your interest in this matter." As its rationale for denying the Petition, the then-VA Chief of Staff simply stated that VA already was reviewing the TSGLI program in consultation with the Department of Defense, and the amendments to the TSGLI regulation sought by McKinney would "require consultation with military medical experts and review of the latest research" as well as "an actuarial assessment."

10. McKinney then sought review of the denial of his Petition by the U.S. Court of Appeals for the Federal Circuit, arguing that VA violated the APA. *McKinney v. McDonald*, No. 16-1032 (Fed. Cir.). Before any briefing occurred, however, VA back-tracked, with the then-Chief of Staff stating in a letter dated December 1, 2015 that "VA will defer a decision on the regulatory changes requested in the Petition until the Year-Ten Review [of the TSGLI program] is complete. The VA Insurance Center estimates it will make a recommendation on your proposals in late Spring 2016." In light of VA's decision to rescind its denial of his Petition, McKinney agreed that the controversy was no longer "ripe" for judicial resolution and subsequently the Federal Circuit's review was dismissed.

11. In a letter dated July 12, 2016, the then-Principal Deputy Under Secretary for Benefits (performing the duties of Under Secretary for Benefits) stated in part:

> In response to [McKinney's] petition, VA agrees to engage in rulemaking upon completion of the TSGLI Year-Ten Review, a comprehensive review of the TSGLI program. VA is conducting this review to determine which losses should be

> covered under TSGLI and to make improvements in the administration of the program, including clarifying existing program standards and implementing new administrative enhancements to improve efficiency. VA will address your suggestions through the rulemaking process. This will ensure appropriate public participation in VA's rulemaking through notice and the opportunity to comment.
>
> * * *
>
> . . . VA anticipates initiating the rulemaking process in 2017, after the Year-Ten Review is complete and statutorily mandated consultation with DoD has occurred.

12. VA recently indicated in a Court filing that "VA continues to work towards drafting a notice of proposed rulemaking following completion of its Year-Ten Review, but does not yet know when the rulemaking process will be completed." In other words, the "Year-Ten Review" of the TSGLI program—the subject of McKinney's FOIA request—is over.

13. Concurrently with McKinney's withdrawal of his appellate action at the Federal Circuit, and in light of VA's agreement to further consider his Petition, McKinney agreed to narrow the scope of a FOIA request submitted to VA (as had been sought by VA, in part, as a *quid pro quo*). That FOIA request is disputed in this action.

14. To date, despite representing that it expected to act on McKinney's Petition nearly two years ago, and despite having negotiated a narrowed scope for McKinney's FOIA request, McKinney essentially has received silence.

15. The public is owed full and frank disclosure by VA concerning the "comprehensive review" of the TSGLI program. For example, it is unknown whether there have been any meetings concerning that review that should have been subject to the Government in the Sunshine Act of 1976 (Public Law 94-409). In addition, the extent to

which VA has advised or sought input from Congress concerning the review is not known. Moreover, the results of that review remain outside the public eye. With millions of service members and their families counting on TSGLI coverage, transparency is quite important. Unfortunately, the functioning of the TSGLI program is anything but transparent.

**PLAINTIFF'S FOIA REQUEST AND DEFENDANT'S FAILURE TO COMPLY WITH FOIA**

16. By email dated October 8, 2015, McKinney submitted a FOIA request ("FOIA Request") to VA requesting:

> all records in any way concerning or relating to the "comprehensive review" referenced in the statement **"VA, in consultation with DoD, is currently conducting a comprehensive review of the TSGLI program as it approaches its 10th year anniversary in December 2015 to ensure that the program is operating effectively and meeting the intent of Congress,"** which statement was made on page 2 of the attached letter from Robert L. Nabors II of the U.S. Department of Veterans Affairs to Seth A. Watkins, dated August 6, 2015, concerning denial by the VA of the Petition for Rulemaking by Army First Sergeant Hugh Campbell McKinney, Retired, to Amend 38 C.F.R. § 9.20 Governing Traumatic Injury Protection Provided by Statute at 38 U.S.C. § 1980A (note that the denial of the rulemaking petition is the subject of a Petition for Review filed on behalf of petitioner/requester with the U.S. Court of Appeals for the Federal Circuit on October 5, 2015, *McKinney v. McDonald*, No. 16-1032).

*See* **Exhibit 1** (emphasis in original).

17. By email dated October 28, 2015, in response to a telephone inquiry from VA concerning the scope of the FOIA Request, McKinney narrowed the FOIA Request. *See* **Exhibit 2**.

18. By email dated October 29, 2015, VA acknowledged receipt of the narrowed FOIA Request, which VA assigned FOIA tracking number 16-00661-F. *See* **Exhibit 3**.

19. McKinney submitted an administrative appeal concerning the FOIA Request by email on November 9, 2015, "deem[ing] the VA's failure to provide a response determination within the statutory time limits as a denial of the FOIA Request." *See* **Exhibit 4**.

20. VA acknowledged receipt of the administrative appeal of the FOIA Request by email and letter dated November 10, 2015. *See* **Exhibit 5**.

21. McKinney further narrowed the FOIA Request by email to VA dated December 1, 2015 as follows:

- records that set out or reflect the timing of the Review (e.g., when started, when to be completed);
- records that set out or reflect which individuals and organizations are conducting and/or participating in the Review (requester expressly excludes identification of individuals associated with Prudential in its role administering the TSGLI program);
- records that set out or reflect the scope of the Review (requester expressly excludes records, or portions thereof, specifically concerning the scope of any review of Prudential's role in the administration of the TSGLI program);
- ~~records that set out or reflect any decision or intention to include, not include, or consider including, in the Review any consideration of the issues raised in the Petition for Rulemaking by Army First Sergeant Hugh Campbell McKinney, Retired, to Amend 38 C.F.R. § 9.20 Governing Traumatic Injury Protection Provided by Statute at 38 U.S.C. § 1980A submitted to the VA on March 16, 2015 and denied by the VA by letter dated August 6, 2015;~~

- records that set out or reflect the planned reporting of any observations, results, conclusions, and/or recommendations arising from the Review (e.g., will a formal assessment be compiled and distributed, and if so, to whom and will the assessment, or any portion or summary thereof, be made public);

- ~~records that set out or reflect any decision to limit the Review to being "internal" (e.g., not seeking public comment and/or involvement, and no notice to the public that the Review is being conducted);~~

- ~~records that set out or reflect which veterans and military service organizations (VSOs), if any, have been included, or will be included, as participants in the Review, and the extent of their involvement (e.g., are the opinions of VSOs being sought or otherwise offered in connection with the Review; are VSOs participating in any meetings concerning the Review);~~

- ~~records that set out or reflect any communications between the VA and any non-government entities or individuals, including but not limited to the VSOs, concerning the Review (requester expressly excludes communications solely between VA/DoD and Prudential concerning any review of Prudential's role in the administration of the TSGLI program); and~~

- records that set out or reflect any communications between the VA and Congress (including but not limited to any member of Congress, committee thereof, or staff member) concerning the Review.

*See* **Exhibit 6** (underlining and strikeout in original).

22. VA acknowledged receipt of the further narrowed FOIA Request by email dated December 2, 2015. *See* **Exhibit 7**.

23. VA closed McKinney's administrative appeal by email dated April 28, 2016, stating:

> Concerning 16-00661-F, We have been in touch with the VA FOIA Service who has forwarded your request back to the

> Insurance Center for a response. The Insurance Center will be responding directly to you once they have completed processing the request. Accordingly we will close this appeal since the request is actively being processed. If you disagree with the decision once it's issued to you by the Insurance Center, you may appeal that response to our office.

*See* **Exhibit 8**.

24. By emails and letter dated June 7, 2017, VA released twenty-seven (27) documents in response to the FOIA Request. *See* **Exhibit 9**.

25. All but one of the documents released by VA on June 7, 2017 in response to the FOIA Request were unresponsive and irrelevant.

26. Only a single relevant document was released by VA on June 7, 2017 in response to the FOIA Request, entitled TSGLI YEAR-TEN REVIEW. PRE-REVIEW STUDY (undated), which states in part:

> The purpose of the TSGLI Year-Ten Review Pre-Review Study was to obtain information on the current status of the TSGLI Program ***in order to provide a benchmark for which to determine key study areas during the upcoming TSGLI Year-Ten Review***.

(Emphasis added).

27. Not a single document was released by VA on June 7, 2017 in response to the FOIA Request concerning the actual "TSGLI Year-Ten Review," which was the subject of the FOIA Request. The other twenty-six (26) documents disclosed in response to the FOIA Request mostly were an irrelevant collection of journal articles and other literature:

> (1) Robert M. Rush, Jr. et al., *Application of the Mangled Extremity Severity Score in a Combat Setting*, 172 MILITARY MEDICINE 777 (2007);

(2) Navanjun S. Grewal et al., *Simultaneous Revascularization and Coverage of a Complex Volar Hand Blast Injury: Case Report Using a Contralateral Radial Forearm Flow-through Flap*, 173 MILITARY MEDICINE 801 (2008);

(3) Darabos Nikica et al., *Shotgun Injury to the Arm: A Staged Protocol for Upper Limb Salvage*, 175 MILITARY MEDICINE 206 (2010);

(4) Arthur F. Guerrero & Abel Alfonso, *Traumatic Brain Injury-Related Hypopituitarism: A Review and Recommendations for Screening Combat Veterans*, 175 MILITARY MEDICINE 574 (2010);

(5) Michael J. Beltran et al., *Minimally Invasive Shortening Humeral Osteotomy to Salvage a Through-Elbow Amputation*, 175 MILITARY MEDICINE 693 (2010);

(6) Kevin L. Kirk et al., *Partial Foot Amputations in the Combat Wounded*, 20 JOURNAL OF SURGICAL ORTHOPAEDIC ADVANCES 19 (2011);

(7) David I. Devore et al, *For Combat Wounded: Extremity Trauma Therapies From the USAISR*, 176 MILITARY MEDICINE 660 (2011);

(8) David S. Plurad, *Blast Injury*, 176 MILITARY MEDICINE 276 (2011)

(9) James Geiling, Joseph M. Rosen, & Ryan D. Edwards, *Medical Costs of War in 2035: Long-Term Care Challenges for Veterans of Iraq and Afghanistan*, 177 MILITARY MEDICINE 1235 (2012);

(10) Leah Farrell-Carnahan et al, *Subjective Sleep Disturbance in Veterans Receiving Care in the Veterans Affairs Polytrauma System Following Blast-Related Mild Traumatic Brain Injury*, 178 MILITARY MEDICINE 951 (2013);

(11) Michael Kavanaugh et al, *Cardiomyopathy Induced by Sinus Tachycardia in Combat Wounded: A Case Study*, 179 MILITARY MEDICINE 1062 (2014);

(12) Leo L. K. Chen et al., *Posttraumatic Epilepsy in Operation Enduring Freedom/Operation Iraqi Freedom Veterans*, 179 MILITARY MEDICINE 492 (2014);

(13) Matthew W. Keller et al., *Characteristics of Maxillofacial Injuries and Safety of In-Theater Facial Fracture Repair in Severe Combat Trauma*, 180 MILITARY MEDICINE 315 (2015);

(14) Ralph G. DePalma et al., *Blast Injuries*, 352 THE NEW ENGLAND JOURNAL OF MEDICINE 1335 (2005);

(15) David Baxter et al., *Pituitary Dysfunction after Blast Traumatic Brain Injury: The UK BIOSAP Study*, 74 ANNALS OF NEUROLOGY 527 (2013);

(16) Jan E. Kennedy et al., *Posttraumatic Stress Symptoms in OIF/OEF Service Members with Blast-Related and Non-Blast-Related Mild TBI*, 26 NEUROREHABILITATION 223 (2010)

(17) WOUNDED, ILL AND INJURED COMPENSATION AND BENEFITS HANDBOOK, Office of Warrior Care Policy, Department of Defense (2014);

(18) Hannah Fischer, A GUIDE TO U.S. MILITARY CASUALTY STATISTICS: OPERATION FREEDOM'S SENTINEL, OPERATION INHERENT RESOLVE, OPERATION NEW DAWN, OPERATION IRAQI FREEDOM, AND OPERATION ENDURING FREEDOM, Congressional Research Service (Aug. 7, 2015);

(19) INTERNATIONAL STATE-OF-THE-SCIENCE MEETING ON BLAST INJURY DOSIMETRY, DoD Blast Injury Research Program Coordinating Office (June 8-9, 2010);

(20) WOUNDED WARRIOR PAY AND ENTITLEMENTS HANDBOOK, Wounded Warrior Pay Management Team, Defense Finance and Accounting Service (Jan. 2013);

(21) Traumatic Injury Protection Rider to Servicemembers Group Life Insurance, 70 FR 75,940 (Dec. 22, 2005) (interim final rule);

(22) Traumatic Injury Protection Rider to Servicemembers Group Life Insurance, 72 Fed. Reg. 10,362 (Mar. 8, 2007) (final rule);

(23) Notice of Docketing for *McKinney v. McDonald*, No. 16-1032 (Fed. Cir.);

(24) *McKinney v. McDonald* Summary (one page);

(25) Letter to Robert H. McDonald re Petition to Initiate Rulemaking Submitted by Hugh McKinney Concerning TSGLI (June 22, 2015); and

(26) VA Insurance Project Plan for Analyzing Issue in TSGLI Petition for Rulemaking (2 pages).

*Id.*

28. On June 12, 2017, McKinney administratively appealed the denial of requested records in connection with the FOIA Request, stating in part:

> VA's Response is deficient, and deemed by requester to be a denial of requested records, for at least the following reasons that are hereby administratively appealed.
>
> VA took **20 months (609 days)** to respond to this FOIA Request, releasing twenty-seven (27) documents all dated no later than October 2015, i.e. *circa* the date that this FOIA Request was submitted. It is apparent that VA did not conduct a reasonable search for responsive records and applied an improper cut-off date to its search.
>
> "[A] temporal limit pertaining to FOIA searches . . . is only valid when the limitation is consistent with the agency's duty to take reasonable steps to ferret out requested documents." *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983), *vacated in part in other respects*, 711 F.2d 1076 (D.C. Cir. 1983) (per curiam); *concur Public Citizen v. Dep't of State*, 276 F.3d 635, 644 (D.C. Cir. 2002), *aff'd in relevant part and rev'd on other grounds*, 276 F.3d 634 (D.C. Cir. 2002) (the proposition that a "time-of-request cut-off date" is always reasonable has been "expressly rejected"). The burden of establishing the reasonableness of temporal limitations on a search lies with the agency. *McGehee*, 697 F.2d at 1101.

> When there has been a lengthy passage of time between the date the FOIA request was submitted to the agency and the date when the agency finally issues a response "determination," and ultimately produces documents, the propriety of a "time-of-request cut-off date" is viewed with great skepticism. *Id.* at 1103-04.
>
> "[T]he most appropriate cut-off date for [a] search would be the date of [VA's] ***final decision*** . . . Surely, at that point, Plaintiff[] [is] put on notice that the VA [is] no longer searching for records. Additionally, . . . such a cut-off date in the absence of a published cut-off date 'is consistent with the agency's duty to take reasonable steps to ferret out requested documents.'" *Dayton Newspaper, Inc. v. VA,* 510 F. Supp. 2d 441, 450-51 (S.D. Ohio 2007).
>
> Additionally, "[l]imiting a search by applying a cut-off date, without providing notice of the date to the requester, renders the search unreasonable." *Dayton Newspaper*, 510 F. Supp. 2d at 449; *see also McGehee*, 697 F.2d at 1105.
>
> The Response provided only a single document specifically concerning VA's comprehensive review of the TSGLI program, entitled TSGLI Year-Ten Review: Pre-Review Study which was created August 10, 2015. VA failed to provide any other documents specifically concerning that review.
>
> In sum, requester appeals (1) VA's failure to conduct a reasonable search for responsive records, (2) VA's failure to provide any notice of a cut-off date used for its search, and (3) VA's use of an unreasonable cut-off date, substantially earlier than June 7, 2017 (the date on which VA finally provided a response to the FOIA Request).

*See* **Exhibit 10** (emphasis in original).

29. VA acknowledged McKinney's administrative appeal by email dated June 13, 2017. *See* **Exhibit 11**.

30. In response to McKinney's administrative appeal, by letter dated July 24, 2017, VA ordered a new search and response concerning the FOIA Request, stating in part:

> We have reviewed the decision provided by the FOIA Officer and in light of the response you originally received and your appeal, we are remanding this matter back to the FOIA Officer for further processing. Specifically, the FOIA Officer has not provided this office sufficient information for us to conclude that a reasonable search for responsive records was conducted. Therefore, we are instructing the FOIA Officer to conduct a new search; document those efforts thoroughly; review and additional responsive documents that the new search yields; consider the application of any FOIA exemptions; and, issue a superseding agency decision.

*See* **Exhibit 12**.

31. To date, McKinney has received neither a "superseding agency decision" nor any additional responsive documents in connection with the FOIA Request.

32. VA has not made responsive, non-exempt records promptly available to McKinney in connection with the FOIA Request.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

33. McKinney has exhausted any and all administrative remedies with respect to VA in connection with the FOIA Request.

## FAILURE TO MAKE GOOD FAITH EFFORT TO COMPLY WITH 5 U.S.C. § 552(a)(3)(A)

34. The FOIA statute requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

35. The FOIA Request, as amended, reasonably describes the records sought by requester and was made in accordance with the published rules for submitting a FOIA request.

36. VA has not made the requested records "promptly available" in response to the FOIA Request.

37. In the more than two years since the FOIA Request was submitted to VA on October 8, 2015, VA has not conducted a proper search and produced all responsive, non-exempt records with respect to the FOIA Request.

38. VA instituted a policy on October 31, 2013 that "[e]ffective immediately, all responses to FOIA requests by [Veterans Affairs Central Office ("VACO")] offices and field components will be reviewed by the designated officials prior to release to the public." *See* **Exhibit 13**, VA Memorandum from Stephen W. Warren, Executive in Charge and Chief Information Officer for Information and Technology (005A), to Under Secretaries, Assistant Secretaries, and Other Key Officials, dated October 31, 2013, concerning "Release of FOIA Information (VA IQ Folder 7413064)." The policy further stated that "[t]he purpose of the review will be for sensitivity determination," "[e]ach of the designated review offices will develop specific procedures for review for their respective components," and "[a]ll field components are expected to follow these procedures." *Id.*

39. On information and belief, VA considers the subject matter of the FOIA Request—whether the TSGLI program is "operating effectively and meeting the intent of Congress"—to be particularly sensitive.

40. On information and belief, processing of the FOIA Request has been delayed by VA due to the sensitivity of the subject matter thereof, even though the FOIA statute requires prompt disclosure of responsive records regardless of any such sensitivity.

41. On information and belief, VA has not accorded the FOIA Request a proper scope due to the sensitivity of the subject matter thereof, even though the FOIA statute requires prompt disclosure of responsive records regardless of any such sensitivity.

42. By virtue of (i) VA's failure to conduct a search of a proper and reasonable scope and provide a production of responsive, non-exempt records in response to the FOIA Request submitted over two years ago, (ii) VA's production of an almost entirely unresponsive and irrelevant set of records, to date, in response to the FOIA Request, (iii) VA's failure to communicate, commit to, and/or meet a time frame during which VA will discharge its duties under FOIA with respect to the FOIA Request submitted over two years ago, (iv) VA's delay in processing the FOIA Request due to its "sensitivity," and (v) the untimeliness of VA's statutorily-required actions concerning the FOIA Request, VA has failed to make a good faith effort to comply with 5 U.S.C. § 552(a)(3)(A).

**<u>FIRST CAUSE OF ACTION:</u>**
**Unlawful Failure to Disclose Agency Records**
**With Respect to the FOIA Request**

43. McKinney repeats and re-alleges paragraphs 1-42 above.

44. McKinney has a legal right under FOIA to obtain the agency records requested from defendant VA in the FOIA Request, and no legal basis exists for defendant's failure to make available the requested records.

45. On information and belief, with respect to any searches for records responsive to the FOIA Request, defendant VA and its components have used or will use a temporal limit, i.e. a "cut-off date" by which records were created, that is earlier than the date of the Complaint in this action.

46. With respect to the FOIA Request, defendant VA's (i) failure to exercise due diligence with respect to searching for responsive records and making the requested records promptly available, (ii) failure to exercise due diligence with respect to processing the request and making the requested records promptly available, (iii) failure to provide notice of, and use, a reasonable cut-off date with respect to searches for responsive records, (iv) failure to discharge its statutorily-required obligations in good faith, and (v) wrongful withholding of agency records are unlawful, and in violation of FOIA, including 5 U.S.C. § 552(a)(3), as well as VA's regulations promulgated under FOIA.

47. McKinney is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records.

## SECOND CAUSE OF ACTION:
## Violation of the Administrative Procedure Act for Failure to Conduct Proper Search and Wrongful Withholding of Records With Respect to the FOIA Request

48. McKinney repeats and re-alleges paragraphs 1-47 above.

49. Defendant VA's (i) failure to exercise due diligence with respect to searching for responsive records and making the requested records promptly available, (ii) failure to exercise due diligence with respect to processing the request and making the requested records promptly available, (iii) failure to provide notice of, and use, a reasonable cut-off date with respect to searches for responsive records, (iv) failure to discharge its statutorily-required obligations in good faith, and (v) wrongful withholding of agency records each constitute agency action unlawfully withheld and unreasonably delayed, in violation of the APA, 5 U.S.C. §§ 701-06. VA's failure to properly search, and its withholdings, each are arbitrary, capricious, an abuse of discretion, not in accordance with law and without observance of procedure required by law, all in violation of the APA.

50. McKinney is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records in connection with the FOIA Request.

**REQUESTS FOR RELIEF**

WHEREFORE, McKinney requests that judgment be entered in her favor and against defendant, and that:

a) defendant and any of defendant's agents or other persons, offices, or components acting for, with, by, through or under them be ordered to promptly conduct an expedited and reasonable search for records responsive to McKinney' request under FOIA;

b) defendant and any of defendant's agents or other persons, offices, or components acting for, with, by, through or under them be enjoined and

restrained from continuing to fail to conduct a proper search and from withholding records relevant to McKinney' request under FOIA and in violation of the APA;

c) the Court permit discovery with respect to whether defendant has made a good faith effort to discharge its statutorily-required obligations under FOIA and make the requested records promptly available, and provide requested relief as warranted;

d) the Court declare that the requested records are not exempt from disclosure under FOIA and order defendant to disclose the requested records in their entireties and make copies available to McKinney;

e) the Court enter a judgment awarding McKinney reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412; and

f) the Court award all other such relief to McKinney as this Court deems just, proper and equitable.

Dated: February 19, 2018

Respectfully submitted,

/s/ Seth A. Watkins
Seth A. Watkins (D.C. Bar # 467470)
Email: watkins@wlapllc.com
WATKINS LAW & ADVOCACY, PLLC
1455 Pennsylvania Avenue NW, Suite 400
Washington, DC 20004
Telephone: (202) 355-9421
Facsimile: (202) 355-9424

*Attorney for Hugh Campbell McKinney*